IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 128,652

STATE OF KANSAS,
*Appellee*,

v.

BILLY SHANE BARKER,
*Appellant.*

SYLLABUS BY THE COURT

1.

The invited error doctrine precludes a party from asking a district court to rule in a given way and then challenging that ruling on appeal. The doctrine's application turns on whether the record reflects the party's action in fact induced the court to make the claimed error. In the jury instruction context, the party must have affirmatively asked to omit an instruction or affirmatively rejected the court's offer to give it. Merely failing to request an instruction does not invoke the invited error doctrine.

2.

Appellate courts review jury instruction challenges for error by determining whether the instruction was legally and factually appropriate, and if so, conducting a reversibility analysis.

3.

Evidence supporting a lesser included instruction may come from any source, including the defendant's own testimony.

4.

The party who fails to request an appropriate instruction bears the burden to firmly convince the appellate court the jury would have reached a different verdict had the missed instruction been given.

5.

A prosecutor is permitted to draw reasonable inferences from the evidence and is given wide latitude in drawing those inferences.

Appeal from Cherokee District Court; MARADETH FREDERICK, judge. Oral argument held May 19, 2026. Opinion filed July 17, 2026. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Kris W. Kobach*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: In this direct appeal, Billy Barker claims instructional and prosecutorial errors caused the jury to find Levi Porter's death amounted to first-degree premeditated murder after a gun discharged during a physical altercation. We agree the district court erred by not giving unrequested jury instructions on lesser included offenses but hold these failures were not clearly erroneous. We also reject Barker's prosecutorial error claims. Therefore, we affirm his conviction.

FACTUAL AND PROCEDURAL BACKGROUND

Barker and Porter became friends starting in 2019 or so when Porter started regularly performing odd jobs for Barker. Porter often helped Barker remove vehicle parts and sell them through Facebook. Their relationship soured after Porter sold some parts without authorization and kept the money in 2022, but they eventually reconciled and resumed working together.

Renewed friction emerged a few months before Barker shot and killed Porter, when Barker accused Porter of once again taking or misusing his property. Resentful, Barker talked with several people about the situation. He told his cousin he would shoot Porter in the head two months before the incident. Then, just a few hours before Porter's death, Barker went looking for Porter at his grandparents' home and, not finding him, threatened Porter's grandmother that he would do something he would regret while gesturing in a stabbing motion.

Barker later went by the lot where he stored vehicles and saw someone under one of his trucks. He investigated, discovered it was Porter, and confronted him about the stolen parts. Barker said the argument turned physical when Porter reached for Barker's concealed gun, which discharged as they fell to the ground. Porter suffered a fatal gunshot wound and died at the scene. The State charged Barker with first-degree premeditated murder and related weapon offenses.

At trial, the State's witnesses testified to the prior tensions between the two and Barker's statements showing an intent to harm or kill Porter. The State presented forensic evidence indicating the bullet, fired from behind at very close range, struck him straight in the head about 3 to 4 feet from the ground. A forensic pathologist testified he found

3

methamphetamine in Porter's system at a level around 2800 ng/mL and noted much lower levels, between 200 and 600 ng/mL, have been associated with aggressive behavior.

When Barker testified, he acknowledged prior disputes but asserted they largely got along. He recalled asking Porter what he was doing at the scene, but Porter "never said a word" and acted strangely. Barker said "something wasn't right just the way his eyes were. His eyes were huge." Barker claimed the gun accidentally discharged while he was defending himself from Porter trying to grab the gun.

The district court instructed on self-defense. But the jury rejected that claim and convicted Barker as charged: first-degree premeditated murder, criminal possession of a weapon by a felon, and criminal carrying of brass knuckles. He now directly appeals to this court. Jurisdiction is proper. See K.S.A. 22-3601(b)(4) (convictions for off-grid crimes are directly appealable to the Supreme Court); K.S.A. 21-5402(b) (first-degree murder is an off-grid person felony).

FAILURE TO INSTRUCT ON LESSER INCLUDED OFFENSES

Barker argues the district court should have instructed without being asked on the legally and factually appropriate lesser included offenses of the charged first-degree murder: second-degree intentional murder, second-degree reckless murder, reckless involuntary manslaughter, and excessive force involuntary manslaughter. The State claims Barker induced the alleged omissions. The State also asserts the omitted instructions were not factually supported, and even if they were, their omissions were not clearly erroneous. After addressing the preliminary claims, we hold the failure to instruct on the lesser included offenses was not clearly erroneous.

4

*Invited error*

The invited error doctrine precludes a party from asking a district court to rule a given way and then challenging that ruling on appeal. *State v. Douglas*, 313 Kan. 704, 707, 490 P.3d 34 (2021). Appellate courts examine the party's conduct in inducing the alleged error and the context in which that conduct occurred to determine whether the doctrine applies. 313 Kan. at 707. The doctrine turns on whether the instructions would have been given or omitted but for the party's actions. 313 Kan. at 708. Appellate courts review invited error as a question of law subject to unlimited review. 313 Kan. at 706.

Before trial, neither party proposed any lesser included homicide instructions. At the initial instructions conference, the district court asked the defense whether it wished to include any additional instructions, and defense counsel responded, "No, Judge." The court continued the conversation:

"THE COURT:  Nothing? Okay. I've researched lesser includeds before the trial. There is some case law on that. My reading of it is it's not required to be given. But . . . I'll welcome your argument tomorrow and you can argue too.

"[DEFENSE]:  I would just say we've researched a similar issue and I don't think it's required. I think it's more of a judgment call.

"THE COURT:  And you're not requesting a lesser included?

"[DEFENSE]:  We are not at this time, Judge."

When the instructions conference resumed the next day, the court returned to the matter.

"THE COURT:  All right. Are you requesting any lesser includeds?

5

"[DEFENSE]:  No, Judge.

"THE COURT:  Okay. Then I'm not going to instruct on lesser includeds. The case law indicates that it's not required and so I'm not going to instruct on that. We'll just leave it at what he's charged with. Okay."

The State believes these exchanges show Barker induced the district court to omit the instructions by twice confirming he was not requesting them. But as Barker correctly points out, there is a difference between indicating he would not request such instructions and asking the court not to give them.

Invited error precludes a defendant from challenging the omission of jury instructions in only two circumstances:  when the defendant (1) affirmatively requests the omission or (2) affirmatively rejects the court's offer to give the instruction. *Douglas*, 313 Kan. at 708. For example, the doctrine applied in *State v. Angelo*, 287 Kan. 262, 279-80, 197 P.3d 337 (2008), when the defense affirmatively refused a district court's offer to instruct on a lesser included crime, preferring "an 'all-or-nothing' stance before the jury."

But merely failing to request an instruction does not amount to invited error. *Douglas*, 313 Kan. at 709. There must be some "causal connection between counsel's statement and the court's instruction decision." *State v. Barnes*, 320 Kan. 147, 176, 563 P.3d 1225 (2025). That connection was missing in *Barnes* because defense counsel simply informed the court he was not requesting such instructions and was uncertain if any applied. 320 Kan. at 175-76. Ultimately, the question is whether the instructions would have been given absent the defense's conduct. See *Douglas*, 313 Kan. at 708 (applying a but-for test).

6

Like *Barnes*, Barker's counsel merely replied, "No, Judge," when asked if he wanted any lesser included instructions. And while the State asserts Barker still induced the omissions because the district court had not yet made up its mind, the record does not establish that Barker in any way *caused* the district court to reach its decision. The discussions at both conferences reflect only that the court reviewed the relevant caselaw, decided it was not required to give the instructions, and expressed a willingness to consider the defense's position before deciding whether to give any.

We hold invited error does not bar our appellate review.

*Error analysis*

Appellate courts review jury instruction challenges for error by determining whether the instruction was legally and factually appropriate, and if so, conducting a reversibility analysis. *State v. Thille*, 320 Kan. 435, 437, 570 P.3d 18 (2025). The parties correctly agree the omitted instructions were legally appropriate. See K.S.A. 21-5109(b)(1) ("A lesser included crime is . . . [a] lesser degree of the same crime."); *State v. Gentry*, 310 Kan. 715, 721, 449 P.3d 429 (2019) ("[S]econd-degree murder, voluntary manslaughter, and involuntary manslaughter are lesser included offenses of first-degree premeditated murder."). But they dispute whether the lesser included instructions were factually appropriate.

An appellate court exercises unlimited review of the entire record and views the evidence in the light most favorable to the requesting party when deciding this. A lesser included offense instruction is factually appropriate when "there is some evidence, viewed in a light most favorable to the defendant, emanating from whatever source and proffered by whichever party, that would reasonably justify the defendant's conviction for that lesser included crime." *State v. Lowe*, 317 Kan. 713, Syl. ¶ 1, 538 P.3d 1094 (2023).

*Second-degree intentional murder*

A lesser included offense instruction is factually appropriate when the charged offense and the lesser included offense share all but one element and that element raises a question of fact. *Lowe*, 317 Kan. at 718-20. For example, the *Lowe* court held a simple assault as a lesser included offense of aggravated assault would have been factually appropriate since the jury should have decided whether the defendant used her car as a deadly weapon, which was the only differentiating element between the two offenses. 317 Kan. at 718-20. Here, the only element separating the charged crime of first-degree murder from second-degree intentional murder is the premeditation element. Compare K.S.A. 21-5402(a)(1) (first-degree premeditated murder is "the killing of a human being committed . . . [i]ntentionally, and with premeditation"), with K.S.A. 21-5403(a)(1) (second-degree intentional murder is "the killing of a human being committed . . . [i]ntentionally").

And while the State contends a second-degree intentional murder instruction is only required when the evidence of premeditation is circumstantial and could support a reasonable inference the killing was not premeditated, that misconstrues *State v. Scaife*, 286 Kan. 614, 186 P.3d 755 (2008). Instead, *Scaife* turns on whether the evidence permits a reasonable inference of the lesser offense if the evidence, even if it is weak or inconclusive, would permit a rational jury to convict of that lesser offense. 286 Kan. at 621. If such an inference exists, the instruction is required, regardless of whether other evidence (even "direct" evidence) strongly points to premeditation. 286 Kan. at 621.

Whether Barker premeditated the killing is a question of whether the testimony about Barker's prior statements is credible, and if so, how much weight to give it. This is

8

a quintessential jury question; the district court should have instructed on second-degree intentional murder as legally and factually appropriate under *Lowe* and *Scaife*.

We hold the district court erred in failing to instruct on second-degree intentional murder.

*Second-degree reckless murder and reckless involuntary manslaughter*

Second-degree reckless murder, as well as reckless involuntary manslaughter, would have been factually appropriate. We discuss these offenses together, since the only difference between them is the defendant's mental state. See *State v. James*, 309 Kan. 1280, 1300, 443 P.3d 1063 (2019) ("The 'difference between unintentional second-degree murder and involuntary manslaughter is one of degree and not one of kind.'").

A defendant commits second-degree reckless murder by killing a person "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 21-5403(a)(2). If, on the other hand, the defendant killed another recklessly, that is with a conscious disregard of a substantial and unjustifiable risk, the defendant is guilty of reckless involuntary manslaughter. K.S.A. 21-5405(a)(1); K.S.A. 21-5202(j) ("A person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."); *James*, 309 Kan. at 1300.

The record here supports both instructions because the evidence could reasonably be viewed as showing a struggle over a firearm escalated into an unintentional but reckless killing. According to Barker's testimony, when he encountered Porter on his lot

9

and noticed Porter acting strangely, Barker nevertheless initiated a confrontation. A tense encounter quickly developed into a physical altercation over a firearm. Porter grabbed for the gun, Barker pulled it back, and both men fell while still wrestling for control. Barker stated the gun was accidentally fired during this struggle, not as a deliberate act. See *Gentry*, 310 Kan. at 722 ("'[L]esser included offense instructions must be given when there is some evidence . . . emanating from whatever source and proffered by whichever party, that would reasonably justify a conviction of some lesser included crime.'"). And the degree of recklessness was for the jury to decide. See *James*, 309 Kan. at 1301 ("If jurors accepted that James acted recklessly, the evidence did not foreclose culpability at either end of the spectrum for the results of his reckless acts.").

We hold the district court erred by failing to instruct on second-degree reckless murder and reckless involuntary manslaughter.

*Excessive force involuntary manslaughter*

Our last factual appropriateness inquiry focuses on excessive force involuntary manslaughter, which is an imperfect form of self-defense. A defendant who lawfully acts in self-defense and kills another human being by using excessive force is guilty of involuntary manslaughter. *State v. Nunez*, 313 Kan. 540, Syl. ¶ 6, 486 P.3d 606 (2021); K.S.A. 21-5405(a)(4) ("Involuntary manslaughter is the killing of a human being committed . . . during the commission of a lawful act in an unlawful manner."). Such an instruction is only appropriate if the evidence shows the defendant intentionally acted in self-defense. *State v. Collins*, 257 Kan. 408, Syl. ¶ 5, 893 P.2d 217 (1995).

At trial, Barker testified he feared Porter, that he acted in self-defense to gain control of the gun, and that the discharge was unexpected. And while Barker's own statement did not show an intentional killing, the State's forensic evidence did. Hence,

10

some evidence would have reasonably justified a conviction under K.S.A. 21-5405(a)(4). This is true even though the State may be right that Barker's testimony was both self-serving and contradicted by forensic evidence. In Kansas, a defendant's testimony, standing alone and without corroboration, can support a lesser included offense instruction. *State v. Hardwick*, 321 Kan. 519, 530, 582 P.3d 555 (2026).

We hold the district court erred in not giving an excessive force involuntary manslaughter instruction.

*Clear error*

We assess reversibility based on whether the challenging party preserved the issue below. *Thille*, 320 Kan. at 437. Barker concedes he did not preserve the issue by requesting the instructions at trial, so we apply the clear error standard. *Thille*, 320 Kan. at 437. In other words, Barker must firmly convince this court the jury would have reached a different verdict had the missed instruction been given. *State v. Berkstresser*, 316 Kan. 597, Syl. ¶ 3, 520 P.3d 718 (2022).

*Second-degree intentional murder*

"When there is overwhelming evidence of premeditation, a defendant will fail to firmly convince an appellate court that a jury would have found the defendant guilty of second-degree intentional murder if the lesser included instruction had been offered." *Douglas*, 313 Kan. at 710. In Barker's case, there was overwhelming evidence showing premeditation. His cousin, Larry Link, heard Barker make threatening statements about Porter two months prior. At trial, Link testified Barker asked whether he knew Porter, which led to a conversation about him. Link responded he did not, and Barker said he was "going to blow his brains out." When Link suggested, "[Y]ou're big enough, can't

11

you just whip his ass," Barker replied, "[N]o, I'm going to shoot him in the head." This testimony, if believed, establishes premeditation; Barker stated he would shoot Porter in the way the State presented it at trial. And this is not the only evidence.

During the visit with Porter's grandparents shortly before the incident, Barker told Porter's grandmother, June Thompson, "I'm so mad [at Porter] that I'll probably so [*sic*] something I would regret." Thompson testified Barker "acted very angry at that point" and accompanied his remark with a stabbing gesture, which she demonstrated for the jury. Even though the specific method mentioned, stabbing, was not ultimately used, that detail is immaterial; premeditation requires only the killing of Porter was thought about beforehand. *State v. Soto*, 301 Kan. 969, Syl. ¶ 13, 349 P.3d 1256 (2015) ("'Premeditation means to have thought the matter over beforehand and does not necessarily mean an act is planned, contrived, or schemed beforehand; rather, premeditation indicates a time of reflection or deliberation.'").

Joshua Walker, who knew both Barker and Porter, also testified that about six months to a year before the incident, Barker told him he would "have to make an example out of one of [the two]," which Walker understood as a threat directed at him and Porter. Although this evidence is, at most, weak and ambiguous to support premeditation, it nonetheless supports an inference that Barker previously contemplated harming Porter and therefore contributes to the overall premeditation showing when considered with Barker's other statements.

Even so, direct evidence of premeditation is not necessary; it may be inferred from a case's circumstances. See *Scaife*, 286 Kan. at 620 ("Direct evidence is such evidence which, if believed, proves the existence of a fact without inference or presumption."); *State v. Wilkins*, 215 Kan. 145, Syl. ¶ 4, 523 P.2d 728 (1974) ("The probative values of direct and circumstantial evidence are intrinsically similar and there is no logically sound

12

reason for drawing a distinction as to the weight to be assigned to each."). Circumstantial evidence of premeditation can be shown by "'(1) the nature of the weapon used; (2) lack of provocation; (3) the defendant's conduct before and after the killing; (4) threats and declarations of the defendant before and during the occurrence; and (5) the dealing of lethal blows after the deceased was felled and rendered helpless.'" *Douglas*, 313 Kan. at 711.

Barker relies on that third factor, arguing he did not attempt to cover up the crime but called the police immediately, which he claims displayed "a complete lack of premeditation." But other factors favor premeditation: After making explicit declarations to kill Porter, Barker used his own gun to fire a lethal shot into the back of Porter's head from close range, with the muzzle positioned perpendicularly against his head. The circumstantial evidence, together with the direct evidence, overwhelmingly establishes the existence of premeditation. As a result, Barker fails to firmly convince us that the jury would have found him guilty of second-degree intentional murder if it had been offered.

*Second-degree reckless murder and reckless involuntary manslaughter*

The same logic applies when weighing reckless killing against intentional killing: When there is overwhelming evidence of intent, a defendant will fail to firmly convince a reviewing court that the jury would have found the defendant guilty of reckless murder had lesser included reckless homicide instructions been given. Cf. *Douglas*, 313 Kan. at 710 ("When there is overwhelming evidence of premeditation, a defendant will fail to firmly convince an appellate court that a jury would have found the defendant guilty of second-degree intentional murder if the lesser included instruction had been offered.").

Here, the record is replete with evidence showing an intentional killing: Porter's head injury suggested a deliberate shot; bloodstain analysis undermined the claim of an

13

accidental discharge during a struggle; and a forensic scientist's opinion about the two men's positioning permitted an inference that Barker was in control when he fired. And Barker's only relevant claim is that even though three people were present at the scene—Barker, his friend, and Porter—the jury heard only Barker's account suggesting the shooting was unintentional. But this still does not overcome the strength of the State's evidence demonstrating intentional homicide.

Like premeditation, there was overwhelming evidence of intent. Barker does not firmly convince us the jury would have convicted him of either second-degree reckless murder or reckless involuntary manslaughter if those instructions had been provided.

*Excessive force involuntary manslaughter*

Barker reasserts the State's evidence of premeditation was weak, pointing to Porter being highly intoxicated and claiming Barker could have used his fists rather than a gun in self-defense. But this ignores the State's overwhelming evidence of an intentional, premeditated killing. It also overlooks Barker's own testimony that the shooting was accidental, a theory that, at most, could support reckless shooting, not excessive force involuntary manslaughter.

To reach Barker's proposed result, the jury would have had to selectively accept mutually inconsistent theories by crediting the State's evidence of an intentional shooting while rejecting its proof of premeditation and, at the same time, accepting Barker's self-defense theory while rejecting his claim it was an accident. This chain of reasoning is unpersuasive. Barker does not firmly convince us the result would have been different. See *Douglas*, 313 Kan. at 709.

Finally, Barker challenges two comments the prosecutor made regarding premeditation during closing arguments. Barker frames the alleged prosecutorial error as a misstatement of law, but the substance of his claims appears to assert a misstatement of law and fact. "A prosecutor's comments fall outside the wide latitude afforded the State in conducting its case when they misstate the law or argue a fact or factual inference with no evidentiary foundation." *State v. Ford*, 320 Kan. 507, Syl. ¶ 4, 571 P.3d 500 (2025).

At closing, the prosecutor stated:

> "He didn't accidentally fire the weapon. He did it intentionally and he thought about it. He thought about it for more than that instant as well. Premeditation means he thought about it. . . . He thought about it well before that. He thought about it at [Porter's grandparents'] house that night. . . . He told [Porter's girlfriend] that he owed him money and he was upset. He thought about it with Josh Walker when he suggested making an example out of both of them. He thought about it explicitly with Larry Link during the cigarette smoke in the garage of the house that they were both visiting. He said explicitly I'm going to shoot that Levi Porter in the head and he said it more than once."

In his view, this misstated the law under *State v. McLinn*, 307 Kan. 307, 320, 409 P.3d 1 (2018), which, he claims, held premeditation "has to be temporally contemporaneous with the intent to do the act that actually killed the victim." But *McLinn* made no such holding; it simply reiterated our well-established law on premeditation, stating:

> "[P]remeditation is more properly understood as a temporal consideration to the mental state of intent:  Premeditation 'means to have thought the matter over beforehand,' meaning 'to have formed the design or intent to kill before the act.' In other words, our premeditation inquiry asks *when* the intent to kill was formed." 307 Kan. at 321.

15

Under Kansas law, premeditation is a prior mental process leading to the killing, not as a thought that must arise instantaneously with the act itself, and "'there is no specific time period'" required for it to exist. 307 Kan. at 321; *State v. Dotson*, 319 Kan. 32, 44, 551 P.3d 1272 (2024). Barker's view of premeditation is simply incorrect. The prosecutor did not misstate the law.

Next, Barker claims the prosecutor misled the jury when discussing the evidence establishing premeditation. In particular, he asserts Link's testimony could not establish premeditation based on his reading of *McLinn* and that, even if Barker thought about killing Porter two months earlier, Porter's girlfriend testified the two had resolved their conflicts and were in a good place by the time of the incident. Both arguments fail.

First, premeditation need not be temporally continuous up to the moment of the intentional killing. Our law requires only that a defendant forms the intent to kill beforehand and then carries out the intentional act of killing. Barker cites no other authority to support his position. Second, as noted, Barker's understanding of *McLinn* is wrong. Moreover, in advancing his prosecutorial error claims, Barker improperly treats Link's testimony as the only evidence of premeditation and suggests it was too remote in time to be meaningful. But as discussed, Porter's grandmother also testified to Barker's threats in the form of a comment and a gesture made just a few hours before the killing.

We hold the prosecutor here properly discussed the evidence, drawing a reasonable inference of premeditation from the witnesses' testimony. See *State v. Shields*, 315 Kan. 814, 839, 511 P.3d 931 (2022) (noting a prosecutor is permitted to draw reasonable inferences from the evidence and is given wide latitude in drawing those inferences). No error occurred.

The district court's judgment is affirmed.